**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **BEVERLY WHITTAKER ARDSON,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **No. 05 C 6116** |
| **v.** ) | |
| ) | **HONORABLE DAVID H. COAR** |
| **DENNEYS RESTAURANT,** ) | |
| ) | |
| **Defendant.** ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Beverly Whittaker Ardson ("Ardson" or "Plaintiff") has brought suit against

Defendant Denny's, Inc.[1] ("Denny's" or "Defendant") for race discrimination under Title VII

and 42 U.S.C. § 1981. Before this Court is Defendant's Motion for Summary Judgment (Doc.

No. 28). For the reasons stated below, this motion is GRANTED.

**1.    FACTS**

Ardson is an African-American woman who was hired as a server at the Denny's

restaurant located at 1175 N. Roselle Road in Hoffman Estates on March 3, 2004. Facts ¶¶ 4, 8.

Luis Banuelos ("Banuelos") did the hiring. Id. ¶ 9. Theresa Binder ("Binder") was the general

manager of the restaurant and was also Banuelos' supervisor. *Id.* Banuelos discussed Plaintiff's

termination with Binder, and she approved it. Id. Throughout her employment at the Hoffman

Estates restaurant, Ardson would work Friday, Saturday, and Sunday of each week, starting in

---

[1]The name of the Defendant, "Denny's," was apparently misspelled at some in the filings
and this error is reflected in the docket. For present purposes, this Court will use Defendant's
spelling for the name of the restaurant chain.

the morning. Id. ¶ 10. Morning shifts typically fell between 6:00 a.m. and 2:00 p.m., 7:00 a.m. and 3:00 p.m., or 8:00 a.m. and 4:00 p.m., though Binder added a 9:30 a.m. to 3:30 p.m. shift for Plaintiff because that was more convenient. Id. ¶ 11.

Plaintiff would sometimes place food orders incorrectly with the kitchen. Id. ¶ 14. On April 9, 2004, Binder wrote her up for this, referencing that a result of these errors was a "verbal warning" and that the consequences for non-improvement would be a "written warning." Id. ¶¶ 15-16. Binder wrote up Plaintiff for ordering errors on April 30, 2004, Id. ¶ 18, and again for a walkout on April 10, 2004, Id. ¶ 21. Another supervisor wrote up Plaintiff on April 25, 2004, for failing to show up to work. Id. ¶ 25. In that instance, the filed form stated that Plaintiff "did not show up for her shift. She asked for time off a week prior and was told to find a replacement and she never did." Id. Plaintiff denies that she was told to find a replacement in that instance. Id. ¶ 26. Plaintiff signed and acknowledged all of these write-ups. Id. ¶¶ 16, 19, 22. At no time between her hiring in March of 2004 and her last working day of July 31, 2004 was Plaintiff ever suspended, demoted, docked in pay, moved between shifts, or reduced in benefits. Id. ¶¶ 28-32.

In July of 2004, the tires of Denny's employee Jose Luis Martinez ("Martinez") were slashed in the Denny's parking lot. Id. ¶ 36. This took place during a Sunday morning shift during which both Martinez and Plaintiff were working. Id. Following the incident, Martinez found a note on his car stating that a "colored" woman working at Denny's was the culprit. Id. ¶ 37. The note was translated to him by a co-worker. Id. Martinez maintains that Plaintiff was the only person of color working at Denny's that day. Id. ¶ 38. On July 31, 2004, Binder returned from vacation and was told that over the prior weekend Martinez had his tires slashed. Id. ¶ 33. Binder was furthermore informed that someone had left a note on the car stating that a

"black lady" had done it.  Id. ¶ 33.  Binder is unsure whether she was told that the note also stated that the offender was a Denny's employee.[2]  Id. ¶ 33. That day, Binder spoke with both Martinez and Plaintiff individually.  Id. ¶ 40-41.  Afterward, she met with Martinez, Plaintiff, and a translator to discuss the incident.  Id. ¶ 42.  During this meeting, Plaintiff stated that it had not been her intention to harm Martinez and offered to pay for the damage that had been done. Id. ¶ 43.  The parties disagree as to whether or not Plaintiff was crying during this meeting, and whether or not she directly admitted to slashing the tires.

Ardson was discharged on August 3, 2004.  *Id.* ¶ 5; 49-50.  Ardson filed a Charge of Discrimination with the Equal Employment Opportunity Commission in May of 2005.  Plaintiff received a notice of right to sue letter on July 28, 2005.  She filed the present lawsuit on October 24, 2005, alleging hostile work environment and unlawful termination based on race, made unlawful under Title VII and 42 U.S.C. § 1981.

**2.      SUMMARY JUDGMENT STANDARD**

A party seeking summary judgment has the burden of showing, through "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that there are no genuine issues of material fact that would prevent judgment as a matter of law.  Fed. R. Civ. P. 56(c).  On a motion for summary judgment, courts "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party."  *Allen v. Cedar Real Estate Group, LLP*, 236 F.3d 374, 380 (7th Cir. 2001).

---

[2]Specifically, at deposition Binder stated "I think it might have said it was a Denny's employee.  I'm not sure.  I don't recall."  Binder Dep. at 34.

Even so, the nonmoving party may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; rather, she must go beyond the pleadings and support her contentions with proper documentary evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In order to successfully oppose a motion for summary judgment, the non-movant must do more than raise a "metaphysical doubt" as to the material facts, *see Wolf v. Northwest Ind. Symphony Soc'y*, 250 F.3d 1136, 1141 (7th Cir. 2001) (citation and quotation omitted), and instead must present definite, competent evidence to rebut the motion, *see Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, the Court must decide, based on admissible evidence, whether any material dispute of fact exists that requires a trial. *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994).

Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. A non-moving party who bears the burden of proof on a specific issue must demonstrate by specific factual allegations that there is a genuine issue of material fact in dispute. *McMillian v. Svetanoff*, 878 F.2d 186, 188 (7th Cir. 1989). This evidence provided by the non-movant must be sufficient to enable a reasonable jury to find in his or her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323.

Mere allegations in the pleadings, unsupported by record evidence, cannot create an issue of fact defeating summary judgment. *Burrell v. City of Mattoon*, 378 F.3d 642 (7th Cir. 2004).

The Seventh Circuit has made it clear that "self-serving affidavits, without any factual support in the record, are insufficient to defeat a motion for summary judgment." *Palmer v. Marion County*, 327 F.3d 588 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990) as stating that "[t]he object of [Rule 56(e) ] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.").  However, it is possible to rebut a motion for summary judgment with the allegations of a complaint, but only to the extent that they are based upon the plaintiff's personal experience. *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (requiring that allegations are admissible at summary judgment under 56(e) so long as they are "based on personal knowledge and [set] forth specific facts showing that there is a genuine issue for trial").  The fact that those statements may be "self-serving" is not a valid grounds for deeming them inadmissible.  *See id.*

3.      **STATUTE OF LIMITATIONS BARS ALL TITLE VII CLAIMS**

        Defendant maintains that all claims brought under Title VII are time-barred for Plaintiff's failure to file with the EEOC within the applicable 300-day statute of limitations.   Defendant supports this defense by asserting that Plaintiff was discharged on August 1, 2004, and that she filed her claim with the EEOC on May 31, 2005.  If true, this would amount to an intervening period of 303 days, and all claims under Title VII would be precluded.  *See Hardin v. S.C. Johnson & Son, Inc.*, 167 F.3d 340, 344-45 (7th Cir. 199).  Plaintiff now denies the accuracy of these dates, claiming that she was in fact dismissed on August 3, 2004, that she filed the EEOC form on May 30, 2005, and that the office at which she filed simply failed to date the form in a timely fashion.

Accepting as true Plaintiff's claim that the termination occurred on August 3, her Title VII claims are still time-barred because her claim of a May 30, 2005 date for the filing of the EEOC complaint is untenable. Plaintiff clearly stated on the complaint now before this Court that her EEOC claim was filed on May 31, 2005, a fact significantly bolstered by the EEOC's date stamp. She now claims that this was in error, and that in fact May 30 was the correct date. However, Plaintiff cannot survive summary judgment simply by contradicting her previous testimony. *Flannery v. Recording Indus. Ass'n of America*, 354 F.3d 632, 638 (7th Cir. 2004); *Amadio v. Ford Motor Co.*, 238 F.3d 919, 926 (7th Cir. 2001). "Judicial admissions are formal concessions in the pleadings, or stipulations by a party or its counsel, that are binding upon the party making them. They may not be controverted at trial or on appeal.... [They] have the effect of withdrawing a fact from contention." *Keller v. United States*, 58 F.3d 1194, 1199 n. 8 (7th Cir.1995) (quotations omitted)). Also, to the extent that Plaintiff's claim of a May 30 effective date introduces a new factual allegation via summary judgment filings, it must be ignored, as by waiting until this time she will have denied Defendants the opportunity to perform discovery on the allegation. *Black v. TIC Investment Corp.*, 900 F.2d 112 (7th Cir. 1990) (citing *Cia. Petrolera Caribe, Inc. v. Arco Caribbean, Inc.*, 754 F.2d 404, 409-10 (1st Cir.1984)).

For the reasons stated above, this Court finds that the effective date of Plaintiff's EEOC filing was May 31, 2005, beyond the 300-day statute of limitations for bringing any Title VII claims related to her employment. Any evidence going against this fact is unsupported and/or directly in conflict with Plaintiff's sworn testimony and overwhelming evidence. Therefore, summary judgment is GRANTED with respect to all claims brought under Title VII.

**4.     SECTION 1981 CLAIM FOR DISCRIMINATORY TERMINATION[3]**

Plaintiff also alleges race discrimination in violation of section 1981, which protects the right of all persons to make and enforce private contracts, "to sue, be parties, give evidence," to have "the full and equal benefit of all laws and proceedings," and to "be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind...."  42 U.S.C. § 1981; *Runyon v. McCrary*, 427 U.S. 160, 168 (1976).  Proof of discrimination for purposes of this claim can be accomplished through either direct or indirect means.

a.     Direct proof of discrimination

Plaintiff has made no attempt to prove her case for discrimination through the use of direct evidence, and this Court finds nothing in the record that could support such a claim.  *See Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003) (requiring "an admission by the decision-maker that his actions were based upon the prohibited animus").  However, she does argue in her summary judgment response that she has presented direct but circumstantial evidence of discrimination sufficient to survive on this claim.  *See Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) (discussing possibility of direct proof being circumstantial, so long as it points "directly to a discriminatory reason for the employer's action").

_____

[3]Though summary judgment has been granted with respect to all Title VII claims, those standards will be occasionally used to elaborate the remaining section 1981 claims.  *See Bennett v. Roberts*, 295 F.3d 687, 697 (7th Cir. 2002) ("[T]he same standards governing liability under Title VII apply to § 1981 claims.") (quoting *Gonzalez v. Ingersoll Milling Machine Co.*, 133 F.3d 1025, 1035 (7th Cir. 1998)).

In support of her argument that discrimination can be inferred from the factual record in this case, Plaintiff points to the following actions taken by Binder: repeated statements to Plaintiff referring to her as "stupid" or stating that "you people need to get your priorities straight"; slamming tables and throwing dishes forcibly into a dish rack in a manner Plaintiff perceived to be threatening; and treating her disparately from other employees by giving her disfavored side work, less than ideal sections of tables, and nitpicking her performance of various tasks. *See generally* Summ. J. Resp. at 6-9.

This evidence completely fails to show a "mosaic" pointing toward discrimination. The only action that is even arguably related to race is the use of the phrase "you people," that is mentioned in Plaintiff's deposition, but which carries no sense of context from which it might be determined that Binder was referring to African-Americans as opposed to some other category, such as the Denny's staff in general. *See* Ardson Dep. at 15-16. According to Plaintiff's own account of this comment, Binder made this remark while reprimanding Plaintiff for her inability to work with the restaurant's computer:

Q:    What did Theresa [Binder] do that you felt was discriminatory based on your race?

A:    Being mean to me.

Q:    How was she mean to you?

A:    ...She would call me you people, call me stupid.

Q:    Give me an example of when she said to you, you people?

A:    "You people needs to get your priorities straight," about the computer. I told her I'm dumb when it comes to the computer. I don't have the knowledge that they have with the computers, would you teach me and I would put the stuff in and she would get so agitated; some of the food would come out wrong and I didn't know. It was different from the one in Addison, very different.

Q:     Now, when she said "you people need to get your priorities straight," who was she talking to?

A:     Me.

Q:     Nobody else was there?

A:     No one.

Ardson Dep. at 15-16.   It is undeniable that the phrase "you people" can be used in a derogatory manner.  While there is no evidence that this was Binder's intent in this instance, at summary judgment all inferences must be made in favor of the non-movant.  *Scaife v. Cook County*, 446 F.3d 735, 738-39 (7th Cir.2006).  Therefore, for present purposes this issue resolves in Plaintiff's favor and this Court will assume that Binder was referring to African-Americans.

However, this nonetheless only provides Plaintiff with a single instance of discriminatory animus, unconnected to any employment action.  Other actions – such as the slamming of tables and dishes, being asked to reweigh salads, or taking on less-than-advantageous job duties – lend nothing to Plaintiff's claim because they are in no way connected either to race or the decision to terminate.  In many instances the actions in question were not even directed toward Plaintiff or another individual.

As for the allegedly disparate treatment, the extent to which this argument – either as part of a "mosaic" of circumstantial evidence or an independent grounds from which discrimination could be inferred – is undermined by a general lack of support.  Ardson has failed to provide any evidence that her pay was appreciably different from that of other workers, or that Binder lacked reasons to criticize the quality of her work or treat her differently for performance reasons. Central to Plaintiff's disparate treatment argument is her claim that she was performing her tasks adequately and at a standard equal to co-workers.  However, in support of this she summarily

states that other managers viewed her in a more positive light – while failing to provide any supporting evidence – and quotes selectively from Binder's deposition – neatly avoiding comments such as "[t]here were times when she had a lot of problems with messing up orders and putting in the wrong thing or adding something on accident" and "[t]here were some [customers] that she was very good with, and then there were others that she just didn't handle to standard...they would be upset about their service." Binder Dep. at 16-17. Plaintiff's disparate treatment arguments are simply too indefinite and unsupported to provide any reasonable factfinder the necessary direct or circumstantial evidence of discrimination.

The above incidents, while potentially assisting the indirect method of proof discussed below, do not point "directly to a discriminatory reason for the employer's action" sufficient to survive summary judgment as direct proof. *See Adams,* 324 F.3d at 939. Plaintiff cites to a district court opinion for the proposition that circumstantial evidence of discrimination need not be tied to the adverse employment action or directed at the plaintiff. *See* Summ. J. Resp. at 7 (citing *Jean-Baptiste v. K-Z, Inc.*, 442 F.Supp.2d 652 (N.D. Ind. 2006)). However, this case does nothing to bolster her argument. First, it has no binding effect on this Court. Second, while the case might provide some support for the possibility that clear connections need not be drawn, it is nonetheless telling that the *Jean-Baptiste* court was confronted with fairly clear instances of discriminatory animus – much clearer than those presented here – and still granted summary judgment against the plaintiff. *See id.* at 664-65 (describing "a work environment purportedly rife with joke-telling based on race and national origin"). Finally, in this instance the majority of actions cited by Plaintiff are not tied to *either* her ultimate termination *or* discriminatory animus, and therefore contribute little to nothing toward showing a pattern from which attitudes and/or

motivations could be inferred.  For these reasons, *Jean-Baptiste* is not inconsistent with this Court's finding that Plaintiff failed to show  a "mosaic" sufficient for purposes of providing direct or circumstantial evidence.

        b.        <u>Indirect proof of discrimination</u>[4]

Plaintiff can only succeed in establishing discrimination under section 1981 if she satisfies the demands of indirect proof under *McDonnell-Douglas*.  *See Anders v. Waste Mgmt. of Wisconsin*, 463 F.3d 670 (7th Cir. 2006) (applying *McDonnell-Douglas* framework to a § 1981 claim).  The indirect method, also called the burden-shifting method, requires the plaintiff first to make out a *prima facie* case of discrimination through establishment of the following four factors: (1) plaintiff had membership in a protected class; (2) plaintiff was meeting the employer's legitimate employment expectations; (3) plaintiff suffered an adverse employment action; (4) similarly-situated employees outside of the protected class were treated more favorably by the employer.  If a plaintiff proceeding under the indirect method of proof fails to establish any of the four factors in the *prima facie* case, summary judgment should be entered for the defendant.  If the plaintiff establishes the *prima facie* case, the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reasons for the adverse employment action.  If the defendant offers a legitimate, non-discriminatory reason for the adverse employment action, the burden returns to the plaintiff to "rebut that explanation by presenting

---

[4]As discussed briefly above, to the extent that Plaintiff additionally claims that the allegedly disparate delegation of work duties amounts to an independent basis for this action, *see* Summ. J. Resp. at 8-9, there is no support for this approach.  There is no evidence that her assignments "severely limited Ms. Ardson's earning potential," that other employees of Defendant were not tasked in a similar manner, or that the alleged actions weren't taken in response to her own performance failings.

evidence sufficient to enable a trier of fact to find that the employer's proffered explanation is pretextual [i.e., a lie]." *Peele v. Counry Mut. Ins. Co.*, 288 F.3d 319, 326 (7th Cir. 2002).

It is uncontested that Plaintiff meets two of the four prongs under McDonnell-Douglas; she is undeniably African-American and therefore belongs to a protected class, and she was terminated, thus satisfying the adverse employment action requirement.

However, to the extent that Plaintiff attempts to make a prima facie case of discriminatory termination, she has failed to provide evidence on which a reasonable factfinder could believe that she had performed her job satisfactorily. Even if this Court ignores for the time being her employer's reasonable belief that she slashed a co-worker's tires, Plaintiff's workplace performance was inadequate by any measure available to those making employment decisions at Denny's. As discussed above, Plaintiff relies on her own assertions that she was performing her job satisfactorily, without citing to any objective job measures that might support her claim. In light of the evidence against her on this point, such as multiple on-the-job failings pointed out by her supervisor, *see* Binder Dep. at 16-17, and several incidents warranting formal reprimand through Employee Performance Record statements, *see* Def.'s Summ. J. Mot. Ex. 2b, her own attestations to the contrary are simply not compelling, *see, e.g., Mills v. First Fed. Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 843 (7th Cir. 1996). Plaintiff fails this necessary elements for proving discrimination, therefore summary judgment against Plaintiff is properly granted for her failure to provide evidence supporting a prima facie case. *Celotex*, 477 U.S. at 322.

In any event, every indication was that Plaintiff *did* slash Martinez's tires, a fact which undermines both Plaintiff's assertion that she was performing her duties satisfactorily and any

hope that she might be able to show that Plaintiff's stated reason for terminating her was pretextual. The relevant decision maker, Binder, had reason to believe that Plaintiff had intentionally damaged the property of another employee: she returned from vacation to find that Martinez's tires had been slashed; several parties that were closer to the relevant action connected Plaintiff to the deed; and Binder held a meeting in which Plaintiff made a form of an apology and offered to compensate Martinez for the damage to his car.[5] Even if the *prima facie* case were satisfactorily supported by the evidence, Plaintiff's claim of discriminatory termination would still fail for failing to establish that Defendant's proffered explanation was mere pretext. Therefore, Defendant's motion for summary judgment is GRANTED insofar as Plaintiff claims that her termination or any other employment action was discriminatory under section 1981.

5.      **ANALYSIS OF SECTION 1981 CLAIM FOR HOSTILE WORK ENVIRONMENT**

An employer is prohibited from maintaining a workplace that is permeated with "discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment...." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993) (citations omitted) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 65-67, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)). An employee alleging racial harassment must show: (1) he was subject to unwelcome harassment; (2) the harassment was based on his race; (3) the harassment was severe or pervasive so as to alter the conditions of the employee's work environment by creating a

_____

[5]The exact details of this meeting are in dispute, but Ardson did apologize and offer to pay for the tires.

hostile or abusive situation; and (4) there is a basis for employer liability. *Williams v. Waste Mgmt. of Illinois*, 361 F.3d 1021 (7th Cir. 2004).

To be actionable, the work environment must be hostile to the reasonable person as well as the subjective plaintiff-that is, the claim must be examined from both subjective and objective viewpoints. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). To satisfy the subjective prong, the victim must subjectively perceive the environment to be abusive and to alter the conditions of employment. *Id.* To satisfy the objective prong, the discriminatory conduct must be so severe and pervasive that a reasonable person would find a hostile or abusive work environment. *Id.* Whether an environment is hostile or abusive to the reasonable person and subjective plaintiff can be determined only by looking at all the circumstances. *Gleason v. Mesirow Fin., Inc.*, 118 F.3d 1134, 1143 (7th Cir. 1997) (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. at 371). There are several factors to consider in determining whether a given work environment is sufficiently hostile to violate the statute. *See Hilt-Dyson v. City of Chicago*, 282 F.3d 456, 463 (7th Cir. 2002) (describing factors); *Cerros v. Steel Techs.*, 288 F.3d 1040, 1045-46 (7th Cir. 2002) (same). The factors to consider include, but are not limited to, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Drake v. Minnesota Min. & Mfg. Co.*, 134 F.3d 878, 885 (7th Cir. 1998) (quoting *Harris*, 510 U.S. at 23, 114 S.Ct. at 371).

Plaintiff's hostile work environment suffers a fatal flaw in that she has advanced insufficient evidence of hostile workplace actions driven by discriminatory animus. As previously discussed, the only evidence that so much as hints at a racial motivation behind any

-14-

of the actions at Denny's was Binder's "you people" comment. *See* Ardson Dep. at 15-16.

Though for present purposes this Court accepts this as a racially-tinged remark, it nonetheless

fails to provide the essential proof that discriminatory animus lay at the heart of perceived

hostility generally. There is nothing to tie this single instance of arguable discriminatory

conduct to any of the other issues, such as Plaintiff's assigned work or the violence directed at

tables and dishes.

As a result, the comment "you people" stands as an isolated instance of discrimination

that is wholly insufficient to show a pattern of hostility that permeated the workplace. *King v.

Bd. of Regents*, 898 F.2d 533, 537 (7th Cir.1990) (finding that, "[a]lthough a single act can be

enough, generally, repeated incidents create a stronger claim of hostile environment, with the

strength of the claim depending on the number of incidents and the intensity of each incident").

A single comment that arguably references race is still simply a single comment that does not

create a pervasive environment. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118

S.Ct. 2275, 141 L.Ed.2d 662 (1998); Harris, 510 U.S. at 21; *McPhaul v. Bd. of Comm'rs*, 226

F.3d 558, 567 (7th Cir.2000); *see also EEOC v. Alton*, 901 F.2d 920, 924 (11th Cir. 1990)

(finding the statement "you people can't do a _____ thing right" to be "the type of stray remark

contemplated by Justice O'Connor"); *Ross v. Communication Workers of America, Local 110*,

1995 WL 351462 *3 (S.D.N.Y.1995) (finding remarks concerning "you people" to not rise

above a stray remark in view of its vagueness).

Even if this Court accepts – and it does not – that these other perceived injustices in the

workplace are connected to discriminatory animus, they nonetheless do not rise to a sufficient

level that a reasonable jury could find them sufficiently "hellish" to warrant liability. *See Rogers*

*v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003) (quoting *Baskerville v. Culligan Int'l Co.*, 50 F .3d 428 (7th Cir.1994)).   The actions in question amount to: a single reference to "you people"; the slamming of dishes and tables; allegedly disparate enforcement of the rules; adverse assignments of work stations; and negative comments and yelling.   The Seventh Circuit has repeatedly upheld grants of summary judgment based upon factual situations significantly more severe than the instant case.   *See, e.g., Valentine v. City of Chicago*, 452 F.3d 670, 682 (7th Cir. 2006) (overturning grant of summary judgment where plaintiff had suffered nearly daily comments and been touched inappropriately half-a-dozen times, discussing the fact that all acts were focused on plaintiff); *Russell v. Bd. of Trustees of Univ. of Illinois at Chicago*, 243 F.3d 336 (7th Cir. 2001) (upholding summary judgment despite references to plaintiff as "grandma," statement that all intelligent women are unattractive, a comment about the "staff from hell," calling each of plaintiff's female colleagues a bitch at least once, along with references to a co-worker as dressing "sleazy" and "like a whore," and that she had been hired for her looks).

Therefore, this Court finds that Plaintiff's portrayal of her work environment amounts to "relatively isolated instances of nonsevere misconduct." *Ngeunjuntr v. Metro. Life Ins. Co.*, 146 F.3d 464, 467 (7th Cir.1998) (citing *Saxton v. Am. Tel. & Tel. Co.*, 10 F.3d 526 (7th Cir.1993)). Were this Court to accept all of Plaintiff's assertions, Binder's conduct may have been unpleasant, obnoxious, offensive, and/or rude.   However, it would still provide insufficient evidence that Plaintiff's employment was objectively hostile or abusive as is required.   *Rogers v. City of Chicago*, 320 F.3d 748, 752 (7th Cir. 2003) ("Not every unpleasant workplace is a hostile environment. The occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers would be neither pervasive nor offensive enough to be actionable.  The

workplace that is actionable is the one that is hellish.") (quoting *Baskerville v. Culligan Int'l Co.*, 50 F .3d 428 (7th Cir. 1994)).

For these reasons, this Court finds that Plaintiff has failed to establish a hostile work environment, and Defendant's motion for summary judgment is therefore GRANTED with respect to this claim.

**6.    CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED in its entirety.

Enter:

/s/ David H. Coar
_____
David H. Coar
United States District Judge

Dated: **September 26, 2007**